IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DANIEL D. FERGUSON, § | |
| § | |
| Plaintiff § | |
| § | |
| v. § | Civil Action No. 3:12-CV-00635-B-BK |
| § | |
| MICHAEL J. ASTRUE, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

This case has been referred to the undersigned for Findings, Conclusions, and Recommendation on the parties' cross-motions for summary judgment. For the reasons that follow, it is recommended that Defendant's *Motion for Summary Judgment* (Doc. 16) be **GRANTED**, Plaintiff's *Motion for Summary Judgment* (Doc. 15) be **DENIED**, and the Commissioner's decision be **AFFIRMED**.

### I. BACKGROUND[1]

**A.    Procedural History**

Plaintiff seeks judicial review of a final decision by the Commissioner denying his claim for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). In April 2009, Plaintiff filed his DIB application, alleging that he had been disabled since his date of birth, April 24, 1962, due to non-remedial organic cerebral dysfunction resulting in fine motor skills impairment. (Tr. 162, 185). The Commissioner denied Plaintiff's application at all

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. § 405(g).  (Tr. 1-4, 8-20, 59-64, 67-81, 83-91, 101-103).

**B.     Factual Background**

At the time of the administrative hearing, Plaintiff was 47 years old, and he had a college degree, which took him 26 years to earn because he only took one course at a time.  (Tr. 34, 38-39, 189, 336).  He had no past relevant, full-time work.  (18, 56).

In March 2005, Dr. James Nicholson, Plaintiff's treating physician since 1980, reported that Plaintiff had muscle incoordination, a low I.Q., emotional instability, and a short attention span.  (Tr. 284, 291).  He noted that Plaintiff had been extremely hyperactive as a child, which may have reflected "some degree of autism."  Dr. Nicholson observed that Plaintiff had been in special schools, still watched children's television programming as an adult, and did not have sufficient coordination to drive a vehicle.  (Tr. 291).  In March 2009, Dr. Nicholson stated that Plaintiff was diagnosed at age three or four with non-remedial cerebral dysfunction resulting in fine motor skills impairment.  He noted that Plaintiff wrote very slowly and had a restricted driver's license that he used only for identification, but was otherwise in good health.  (Tr. 185, 284).

Mike Cardwell, Assistant Superintendent for Instruction at the Greenville Independent School District, submitted an undated statement indicating that Plaintiff could only do one thing at a time and was easily distracted and confused, but over time could learn semi-complex tasks by rote. (Tr. 321). Mr. Cardwell noted that Plaintiff had needed extra time to complete tests, and he became confused and angry when presented with multiple variables.  (Tr. 321, 323).  Plaintiff previously had worked in a library for four hours a day where he was self-paced and, therefore,

not stressed. (Tr. 323, 326). Additionally, Mr. Cardwell stated that Plaintiff lacked coordination, and had fine muscle motor control and coordination problems. (Tr. 322).

Consultative psychologist Linda Ludden examined Plaintiff in July 2009. (Tr. 334-352). She noted that he was alert and cooperative, exhibited no involuntary movements, tremors, or mannerisms, and his speech was normal. (Tr. 334, 336). Plaintiff's parents stated that he had been mainstreamed in high school after being in special education for a few years and had worked the same paper route since 1981. (Tr. 335-36). Dr. Ludden noted that Plaintiff exhibited a decreased level of activity, his thought process was logical, and he had only partial insight, but his judgment was good. (Tr. 336-37). Plaintiff's immediate and remote memory were satisfactory, his concentration was good, and his full scale I.Q. of 110 was in the high average range. (Tr. 338). His working memory, which is one's ability to retain information needed to perform specific tasks, was in the average range, and his reading, spelling and math skills were at or above the high school level. (Tr. 340, 352). Dr. Ludden found that Plaintiff did not appear to be autistic as he did not have any social or communication problems nor did he exhibit any stereotypical autistic behavior. (Tr. 367).

Psychologist Kristi Compton examined Plaintiff in March 2010 at Plaintiff's attorney's request. (Tr. 386-94). Dr. Compton found that Plaintiff struggled with social interactions and had engaged in non-normative behaviors suggestive of an autistic spectrum disorder since childhood. (Tr. 386). Plaintiff's history included being hospitalized at age four for uncontrollable behavior and remaining in a secure, locked unit during the week, going home only on weekends. He remained in this program for several months, indicating that he had severe early childhood dysfunction. Dr. Compton noted that throughout his development, Plaintiff

displayed delayed social interaction and failed to develop normal social skills. (Tr. 387).

Dr. Compton found that Plaintiff had not mastered normal adult functioning as he had never lived independently, managed a household, or paid bills. (Tr. 388). Dr. Compton stated that his current functioning was markedly impaired by autistic symptoms, which included (1) limited eye contact, (2) an inability to develop peer relationships, (3) significant difficulty initiating or sustaining conversation, (4) asking inappropriate questions, and (5) exhibiting peculiar voice characteristics. (Tr. 388). Additionally, Plaintiff exhibited maladaptive behaviors that were not congruent with his age and was said to become stressed when there were changes to his routine, which caused repetitive behaviors such as talking to himself, rocking on the floor, hitting his thigh, and losing his temper. (Tr. 388-89). Dr. Compton noted that while Plaintiff exhibited no intellectual impairment, such was not a mandated symptom of autism, which instead reflected in cognitive difficulties and a lack of organizational skills and common sense. (Tr. 389). She observed that Plaintiff had been given special accommodations for test-taking while in college and speculated that, without them, it was highly unlikely that he would have earned a degree. (Tr. 390).

On psychological tests, Plaintiff was significantly deficient in his ability to process information with adequate speed, which Dr. Compton observed was consistent with autistic individuals as their cognitive resources often fragment, and they are prone to distraction . (Tr. 392). Although Plaintiff's I.Q. placed him in the average range, Dr. Compton stated this "does not mean he can learn independent living skills, nor does it mean he can function in an occupational setting." (Tr. 392). Dr. Compton diagnosed an autistic disorder and opined that Plaintiff could be described as high functioning, but he (1) would not be able to function in an

4

occupational setting because he could not interact appropriately with co-workers or supervisors or handle stress without reverting to maladaptive behaviors such as odd vocalizations and motor movements; (2) could not sustain the needed concentration and attention to remain on task; and (3) could not process information normally. (Tr. 392-93).

**C. <u>Administrative Hearing Testimony</u>**

At the administrative hearing, Plaintiff testified that he delivered newspapers to 80 customers every day, and two days a week he inserted advertisements into the papers. (Tr. 35). He previously was responsible for collecting money from his customers until the newspaper began having the subscribers pay the paper directly. (Tr. 35). Plaintiff stated that he had worked for seven years at a public library, 20 hours a week, re-shelving books and assisting the other employees, but he was laid off when the library started using students to perform his tasks. (Tr. 37-38). He recorded his college professors' lectures on tape and transcribed them on a computer when he got home. (Tr. 39, 53). He also used the computer to look up information and write research papers for his classes. (Tr. 53).

Psychologist Betty Feir testified as a medical expert ("ME") that Plaintiff probably had Asperger's syndrome or perhaps was a highly functioning autistic. (Tr. 43). She said that Plaintiff would be limited as to what kind of work he could do, she did not know whether he could work a 40-hour week, and while he could work in a sheltered environment, she did not know whether he could work in a regular job because he was "somewhat odd," and she doubted that it would be easy for him to find a job. (Tr. 43-44). Dr. Feir opined that Plaintiff had various degrees of limitations in his activities of daily living, social functioning, and with regard to concentration, persistence, and pace. (Tr. 45). A vocational expert ("VE") testified that a person

of Plaintiff's age and education who was limited to only occasional contact with the public could perform the jobs of small parts assembler, cleaner, and kitchen helper, but only if he was able to work 40 hours a week. (Tr. 57).

**D.     The ALJ's Findings**

In August 2010, the ALJ found that Plaintiff had the severe impairments of cognitive disorder and possibly high functioning autism, but these impairments did not satisfy the criteria for presumptive disability set forth in the Listings. (Tr. 13). The ALJ noted that Plaintiff had moderate restrictions in his social functioning and mild difficulties with regard to concentration, persistence, and pace. (Tr. 14). The ALJ ruled that Plaintiff had the residual functional capacity ("RFC") to perform a full range of unskilled work at all exertional levels, but could have only occasional contact with the public due to his mental condition. (Tr. 14, 18-19). The ALJ determined that this RFC would allow Plaintiff to work at the jobs identified by the VE. (Tr. 19). Hence, the ALJ found that Plaintiff was not disabled. (Tr. 20).

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an

individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

## III.   ARGUMENT AND ANALYSIS

A.   **Whether the RFC Assessment Accounted for All of Plaintiff's Limitations**

Plaintiff argues that the ALJ's RFC assessment failed to consider Plaintiff's impairments to his fine motor skills, lack of muscle coordination, reduced hand-eye coordination, and reduced major muscle control.  (Doc. 15 at 9).  Plaintiff further contends that the RFC finding also failed to account for the fact that he is easily distracted, becomes confused and angry when presented with multiple variables, and has difficulty processing information with adequate speed and in a normative manner.  Plaintiff asserts that the ALJ failed to evaluate whether these problems would affect his ability to maintain the jobs that the ALJ found he could do.  *Id.* at 10.  Lastly, Plaintiff urges that even though the ME opined that Plaintiff has moderate limitations in concentration, persistence, and pace, the ALJ (1) found only mild difficulties in that regard, (2) did not include those limits in his RFC assessment, and (3) did not explain why he disagreed with the ME's opinion.  *Id.*

Defendant responds that, viewing the record as a whole, the RFC determination included all of Plaintiff's limitations.  (Doc. 16 at 8-9).  Further, Defendant points out that the ALJ did consider Plaintiff's reduced processing speed, distractibility, and inability to multi-task, but permissibly relied on Dr. Ludden's report and the ME's testimony, which found that Plaintiff had (1) above average IQ scores, (2) logical, goal-oriented thought processes, (3) satisfactory remote and working memory, (4) the ability to concentrate, and (5) good recall.  *Id.* at 10-12.  Finally, Defendant contends that substantial evidence supports the ALJ's finding that Plaintiff had only mild difficulties in concentration, persistence, and pace.  *Id.* at 13.

Plaintiff replies that the ALJ did not explain how his fine motor skills problems would

8

not impact his ability to perform the listed jobs, which all involve significant reaching, handling, and fingering. (Doc. 17 at 2-3). Plaintiff also maintains that the ALJ had no basis to reject Dr. Compton's opinion, and his failure to consider the limitations she noted was error. *Id.* at 5.

The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to work on a sustained basis in an ordinary work setting despite his impairments. 20 C.F.R. § 404.1545(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). RFC refers to the most that a claimant is able to do despite his physical and mental limitations. 20 C.F.R. § 404.1545(a). The RFC assessment must first identify the claimant's functional limitations and assess the claimant's work-related abilities on a function-by-function basis. SSR 96-8P, 1996 WL 374184, *1. After identifying such limitations, the ALJ then expresses the claimant's RFC. *Id.* The RFC is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether the claimant can work. 20 C.F.R. § 404.1520(f).

Substantial evidence supports the ALJ's RFC assessment despite his failure to explicitly address Plaintiff's impairments in fine motor skills, muscle coordination, hand-eye coordination, and major muscle control. First, Dr. Nicholson's report of Plaintiff's "muscle incoordination" was dated more than five years before the ALJ's decision, and the ALJ had before him more recent reports suggesting that Plaintiff had no such difficulty. *See* Tr. 384 (consultative report dated November 2009, noting that Plaintiff had normal posture and motor behavior and that his manner, affect and relation to people and things were appropriate); Tr. 336 (cognitive report dated July 2009, noting that Plaintiff exhibited no involuntary movements or mannerisms). Additionally, Dr. Nicholson only noted that the "fine motor skills impairment" affected Plaintiff's ability "to the extent that he writes very slowly and has a restricted driver's license."

9

(Tr. 285).  No work-related restrictions were noted.  Further, although Mr. Cardwell noted that Plaintiff suffered from reduced hand-eye coordination and major muscle control, he was Plaintiff's high school assistant superintendent, and Plaintiff graduated from high school more than 27 years before the ALJ's decision.  (Tr. 190, 321-23).  Substantial evidence supports the ALJ's failure to consider Mr. Cardwell's assessment given the passage of time and the contrary medical evidence of record.  *See* Tr. 366, 384.

Plaintiff's contention that the RFC did not take into consideration his distractibility, confusion when presented with multiple variables, and difficulty processing information also fails.  Mr. Cardwell noted the first two alleged limitations, and the ALJ did not reversibly err by not considering Mr. Cardwell's report for the reasons already stated.  Further, even Mr. Cardwell noted that Plaintiff could learn semi-complex tasks by rote over time.  (Tr. 321).  The last alleged limitation was in Dr. Compton's report, which the ALJ permissibly rejected as inconsistent with the other evidence of record.  In particular, Dr. Ludden noted that Plaintiff's speech was normal, his thought process was logical, his judgment was good, his immediate and remote memory were satisfactory, and his concentration was good.  (Tr. 15-17, 336-37).  Although Dr. Compton's findings were considerably different from Dr. Ludden's and the ME's, this Court cannot re-weigh the evidence or substitute its own judgment for that of the ALJ.  *Greenspan*, 38 F.3d at 236.

Finally, substantial evidence supports the ALJ's finding that Plaintiff has only mild limitations in concentration, persistence, and pace.  The ME stated at the administrative hearing "[o]n concentration, persistence, and pace there seems to be a discrepancy between Dr. Compton and the doctor at 8F.  I'll give him a moderate on concentration, persistence, and pace just because of the discrepancy, but it might be mild."  (Tr. 45).  The ME was ambivalent on this

10

point, and the ALJ's finding that Plaintiff had mild limitations in those areas is supported by the record. (Tr. 382, 384) (Exh. 8F, consultative examination finding that Plaintiff had good recall when it came to history, was able to concentrate, had an appropriate attention span, and there was no evidence of recent or distant memory impairment).

B.  **Whether the ALJ properly applied the standard set forth in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)**

Plaintiff argues that the ALJ failed to apply the correct severity standard at step 2 of the sequential analysis, insofar as he did not expressly cite *Stone* or refer to a similar opinion. (Doc. 15 at 11-12). Defendant responds that any such error was harmless. (Doc. 16 at 14-16).

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A literal application of these regulations is inconsistent with the Act, however, because the definition includes fewer conditions than indicated by statute. *See Stone*, 752 F.2d at 1104-05. Therefore, the Fifth Circuit has held that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Id.* at 1101, 1104-05. In other words, the *Stone* standard does not allow for any interference with the claimant's ability to work. *Sweeney v. Astrue*, 2010 WL 6792819 at *5 (N.D. Tex. 2010). The *Stone* court also held that it would assume that the ALJ applied the incorrect legal standard to the severity requirement unless the correct standard was set forth by reference to *Stone* or a similar opinion, or by an express statement that the court's construction of section 404.1520(c) was used. *Stone*, 752 F.2d at 1106.

11

Nevertheless, *Stone* error is harmless if the ALJ continues beyond step 2 of the sequential analysis. *Stone*, 752 F.2d at 1106 ("[i]n view of both the Secretary's position in this case and our recent experience with cases where the *disposition has been on the basis of nonseverity*, we will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement," thereby mandating reversal) (emphasis added); *see also Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (finding that any error at step 2 was not grounds for a remand because the ALJ continued through step 4 of the sequential analysis); *Jones v. Bowen*, 829 F.2d 524, 527 n.1 (5th Cir. 1987) (no *Stone* error where the ALJ found that the claimant's hypertension was mild and proceeded through step 5, rather than denying benefits "prematurely . . . based on an improper determination of 'non-severity'"); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987) (dicta stating that the claimant's *Stone* argument was irrelevant because the case was not decided at step 2 since the ALJ found that the claimant could return to his past relevant work); *Lopez v. Bowen*, 806 F.2d 632, 634 n.1 (5th Cir. 1986) (no *Stone* error occurred where the ALJ found that the claimant did suffer from "severe" impairments, but found that the impairments did not prevent him from doing his past work).

In the case at bar, the ALJ clearly committed a *Stone* error because he stated that an impairment or combination of impairments is severe if it "significantly limits an individual's ability to perform basic work activities." (Tr. at 12). Further, he said that an impairment or combination of impairments is not severe when "medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." (Tr. at 12). Although the ALJ did refer to 20 C.F.R. § 404.1521 and SSRs 85-28, 96-3p, and 96-4p, none of these sources substitutes as a

proper construction of the standard.

While the ALJ applied the incorrect severity standard, he explicitly accepted Plaintiff's cognitive disorder and possible high functioning autism as severe. (Tr. 13). Under the Fifth Circuit cases cited above, this is not a basis for reversal because the ALJ proceeded beyond step 2 in the sequential analysis in discussing these impairments. *See Adams*, 833 F.2d at 512. Accordingly, Defendant is entitled to summary judgment as to this argument.

**C.     Whether Plaintiff Can Perform the Jobs the VE Testified About**

Plaintiff next argues that the ALJ overlooked limitations which may affect his ability to perform the jobs of cleaner, kitchen helper, and assembler, such as his deficits in coordination and motor speed. (Doc. 17 at 12-13). He also contends that the ALJ did not consider whether (1) those jobs involve some degree of multi-tasking, which is a problem for him or (2) given his moderate deficits in social functioning, he may be distracted by, or a distraction to, others. *Id.* at 13. Plaintiff further maintains that the ALJ never evaluated the stress level of such work to determine whether it would cause Plaintiff to exhibit erratic behavior and whether such behavior would be tolerated on the job. *Id.* Last, Plaintiff points out that the ALJ's hypothetical question to the VE did not include any of these limitations. *Id.* at 13-14.

Defendant responds that Plaintiff's claim that his dysfunction in fine motor skills limits his ability to work is belied by his many activities of daily living. (Doc. 16 at 16). Further, Defendant urges, the ALJ was not required to include Plaintiff's alleged distractibility and difficulty managing stress in his hypothetical question to the VE because only Dr. Compton opined that these limitations affected Plaintiff's ability to work, and the ALJ permissibly rejected her opinion. *Id.* at 17-18.

As discussed above, the only limitations noted in the record caused by Plaintiff's fine motor skills impairment are in his abilities to write and drive. (Tr. 285). Indeed, Plaintiff stated that for his newspaper delivery job, he wrapped the newspapers by hand, put advertisement inserts in them twice a week, delivered the papers, collected money as needed, and tore off a perforated card and handed it to his customers for their receipts. (Tr. 35, 186, 193). Plaintiff also stated that when he worked in the library, he re-shelved books. (Tr. 16, 37). In his daily life, Plaintiff vacuumed, mowed the lawn, fed the dogs, cleaned the cat boxes, and prepared simple meals. (Tr. 16, 39). Accordingly, the ALJ's finding that Plaintiff can work despite any alleged fine motor skill difficulty is supported by substantial evidence. *Leggett*, 67 F.3d at 564.

The Court also finds meritless Plaintiff's contention that the ALJ should have considered whether the listed jobs involved multi-tasking and whether he might become distracted by others or become a distraction himself. The most complex reasoning level of the listed jobs requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DICOT 706.684-022, 1991 WL 679050 (1991). This is the same reasoning level that is required of a newspaper carrier, a job which Plaintiff has done for over 25 years. DICOT 292.457-010, 1991 WL 672569 (1991). Moreover, the ALJ did consider Plaintiff's deficits in social functioning when he limited Plaintiff to only occasional contact with the public. (Tr. 14, 18-19).

While Plaintiff asserts that the ALJ should have evaluated the stress level of the listed jobs to determine whether it might cause him to behave erratically, the only medical evidence of such behavior in the record is Dr. Compton's report, which the ALJ permissibly rejected as set

14

forth above.  Other substantial medical evidence of record indicates that Plaintiff displayed no such behavior.  (Tr. 336, 384); *Greenspan*, 38 F.3d at 236 (noting that the court cannot re-weigh the evidence or substitute its own judgment for that of the ALJ).  Thus, the ALJ did not need to include such limitations in his hypothetical question to the VE, and the ALJ's finding that Plaintiff could perform the jobs the VE listed is supported by substantial evidence.  *Leggett*, 67 F.3d at 564

### IV.  CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment* (Doc. 15) should be **DENIED,** Defendant's *Motion for Summary Judgment* (Doc. 16) should be **GRANTED**, and the Commissioner's decision be affirmed.

**SO RECOMMENDED** on August 13, 2012.

*[signature]*

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

   A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                       _____
                        RENÉE HARRIS TOLIVER
                        UNITED STATES MAGISTRATE JUDGE